UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 06-403 (DSD/FLN)

      Plaintiff,

      v.                                          **REPORT AND**
                                                    **RECOMMENDATION**

Dwight William Alexander,

      Defendant.

_____

Lisa D. Kirkpatrick, Assistant United States Attorney, for the Government.
DeAundres D. Wilson, Esq., for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 18, 2007, on Defendant's Motion to suppress physical evidence, statements or identifications [#29]. Although this motion is a three part motion, Defendant only challenges the seizure of physical evidence pursuant to the search warrant. At the hearing, the Government submitted one exhibit. Government's Exhibit number one is the application and affidavit in support of the search warrant issued in this case. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion be denied.

## I. FINDINGS OF FACT

Hennepin County Deputy Sheriff Ray Walton (hereinafter referred to as "Deputy Sheriff Walton") was the affiant for the search warrant submitted by the Government as exhibit number one. Deputy Sheriff Walton is currently assigned to the Minnesota Gang Strike Force (hereinafter referred to as "MGSF") as an investigator. (Ex. 1 at 2.) In his capacity as an investigator for the MGSF, Deputy Sheriff Walton obtained information from a Confidential Informant (hereinafter

referred to as "CI").  Deputy Sheriff Walton testified in his affidavit that, in the past, the CI has provided names, addresses and telephone numbers of individuals known to be involved in narcotics distribution.  Deputy Sheriff Walton testified that information obtained from the CI has led to the seizure of firearms and narcotics in the past.  (Ex. 1 at 2.)

The CI informed Deputy Sheriff Walton that the CI knew a black male who goes by the name "D Dub" or "Dwight" who is approximately twenty-two years old, wears his hair in small dreadlocks, and is involved in distributing narcotics in the Twin Cities area.  (Ex. 1 at 2.)  The CI informed Deputy Sheriff Walton that "D Dub" lived at a certain address in Minneapolis (hereinafter referred to as "the residence") with his parents and his younger sister.  (Ex. 1 at 2.)  The CI provided Deputy Sheriff Walton with a cellular telephone number which the CI stated that "D Dub" utilized to facilitate his narcotics business.  (Ex. 1 at 2.)  The CI told Deputy Sheriff Walton that "D Dub" is a Black P Stone street gang member.  (Ex. 1 at 2.)

After receiving this information, Deputy Sheriff Walton drove the CI by the residence in Minneapolis, and the CI positively identified the single family residence as the house where "D Dub" lived with his parents.  (Ex. 1 at 2.)  Deputy Sheriff Walton drove the CI around to the back of the residence and the CI stated that an older green and white Oldsmobile parked in the rear driveway was a vehicle that the CI had seen "D Dub" driving in the past.  (Ex. 1 at 2.)

Deputy Sheriff Walton checked the Department of Motor Vehicle records for the owner of the green and white Oldsmobile by running the license plate number through the system, and Deputy Sheriff Walton discovered that the owner of the vehicle was Defendant Dwight William Alexander. (Ex. 1 at 3.)  The Department of Motor Vehicle records listed the residence as Defendant's address. (Ex. 1 at 3.)  Deputy Sheriff Walton then obtained a photograph of Defendant and showed that

2

photograph to the CI.  (Ex. 1 at 3.)  The CI positively identified Defendant as the person the CI knows as "D Dub" or "Dwight".  (Ex. 1 at 3.)  Deputy Sheriff Walton checked the Hennepin County property tax records for the residence and discovered that the owners of the residence were a man and a woman who both have the surname Alexander.  (Ex. 1 at 3.)  Deputy Sheriff Walton also ran a criminal history check on Defendant, and learned that Defendant was arrested by Burnsville police in April 2004 for Possession of a Pistol and Possession of a small amount of Marijuana; was arrested again in February 2005 by Minneapolis police for Drugs First Degree Crack Cocaine; and was arrested a third time in April 2006 for Drugs First Degree, to which Defendant pled guilty to a charge of Drugs in the fifth degree.  (Ex. 1 at 3.)

In the 72 hour period prior to applying for the search warrant, the CI informed Deputy Sheriff Walton that the CI was at the residence with Defendant and observed that Defendant had a black semi-automatic handgun on his person.  (Ex. 1 at 3.)  The CI further informed Deputy Sheriff Walton that the CI observed a white powdery substance at the residence which Defendant represented to be cocaine for sale.  The CI also informed Deputy Sheriff Walton that Defendant had an off-white chunky substance at the residence in his possession and had represented that the substance was for sale.  (Ex. 1 at 3.)

Deputy Sheriff Walton requested that a daytime unannounced search be authorized for the premises.  Deputy Sheriff Walton stated that a daytime unannounced search was necessary because he believed "there [would] be a gun present, and a search warrant executed without announcement of entry provides a lesser risk to the occupants of the residence, other occupants and visitors of the building, and the entering officers."  (Ex. 1 at 4.)  Based on the above information, Deputy Sheriff Walton applied for a search warrant to search the residence for crack-cocaine, cocaine, and other

controlled substances; a black semi-automatic handgun and any other weapons or ammunition; money, precious metals and gemstones; banks statements and other papers showing a profit from drug sales; address books and other papers with phone numbers and names; lock boxes and safes; scales and other drug paraphernalia; letters, bills and other mail which tend to show the owner or renter of the premises; any and all pagers and cellular telephones; any photographs or other recordings that relate to gang activity; and clothing that contained symbols of gang membership. (Ex. 1 at 1.)  The search warrant was issued to search for the above described items on October 19, 2006. (Ex. 1 at 6.)  The search warrant was executed on October 27, 2006. (Ex. 1 at 7.)  The search warrant authorized a daytime unannounced search of the residence.  (Ex. 1 at 6.)

Defendant now moves to suppress the evidence seized when the search warrant was executed.  Defendant challenges the search warrant on its four corners, and argues that the affidavit in support of the search warrant does not establish probable cause to search the residence. Defendant further argues that the search warrant's authorization of an unannounced entry was invalid and that the search warrant was stale at the time it was executed.

## II.    CONCLUSIONS OF LAW

### A.    The No-Knock Provision in the Warrant Does Not Require Suppression of the Evidence Seized When the Warrant Was Executed.

Defendant argues that the search in the present case violated the Fourth Amendment requirement that police knock and announce their presence prior to entering the premises. Defendant argues that the warrant did not recite the requisite reasonable suspicion required to support an authorization to forego the knock and announce requirement.

Assuming without deciding that the search warrant's authorization of the unannounced entry in the present case was not supported by reasonable suspicion and was therefore invalid, the remedy

4

for such a violation is not the suppression of the evidence seized pursuant to the search warrant.  The United States Supreme Court recently addressed the issue of whether the exclusionary rule is the appropriate remedy for a violation of the knock and announce requirement.  *Hudson v. Michigan*, 126 S.Ct. 2159 (2006).  In *Hudson*, the police officers arrived at defendant's residence to execute a valid search warrant.  The officers knocked and announced their presence, but waited only three to five seconds before they opened the unlocked front door and entered the residence.  *Id.* at 2162.  The defendant in *Hudson* moved to suppress all the evidence seized as a result of the warrant, arguing that the premature entry violated his Fourth Amendment rights.  *Id.*

In *Hudson* the Supreme Court considered the appropriate remedy for a knock and announce violation, and concluded that the exclusionary rule is inapplicable in a situation where officers violate the knock and announce rule.  *Id.* at 2165.  The Supreme Court concluded that the seizure of the evidence in *Hudson* was the product of a search conducted pursuant to a valid warrant, "not the fruit of the fact that the entry was not preceded by knock and announce."  *Id.* at 2169.  Therefore, the Supreme Court concluded that the exclusionary rule does not apply to situations where the police fail to knock and announce their presence prior to conducting a search pursuant to a valid search warrant.

The holding in *Hudson* controls the remedy available in the present case.  Therefore, assuming without deciding that the search warrant did not sufficiently state reasonable suspicion to support the authorization of a no-knock warrant, the remedy for such a violation is not suppression of the evidence obtained as a result of the search warrant.[1]  Insofar as Defendant's motion to

---

[1] The *Hudson* Court stated that other remedies, including a civil rights suit, are available to the victim of a knock and announce violation.  *Hudson*, 126 S.Ct. at 2166-67.

suppress relies on this argument, the Court recommends that Defendant's motion be denied.

**B.     The Search Warrant Was Not Stale When it Was Executed**

Defendant argues that because the CI did not provide Deputy Sheriff Walton with specific

information regarding any drug sales that the CI may have witnessed at Defendant's residence, and

because Deputy Sheriff Walton failed to conduct surveillance on the residence to determine whether

there were ongoing narcotics sales, there was no "crucial evidence of long-term drug trafficking

activity" at Defendant's residence.  (Def.'s Mem. at 10.)  Since there was no evidence of long-term

drug trafficking activity at Defendant's residence, Defendant argues that the information provided

in the search warrant was stale at the time the warrant was executed.  (Def.'s Mem. at 10.)

The warrant in the present case was signed on October 19, 2006, and was executed on

October 27, 2006.  The Eighth Circuit has noted that

> There is no bright-line test for determining when information is stale. Whether the
> averments in an affidavit are sufficiently timely to establish probable cause depends
> on the particular circumstances of the case, and the vitality of probable cause cannot
> be quantified by simply counting the number of days between the occurrence of the
> facts supplied and the issuance of the affidavit . . . Time factors must be examined
> in the context of a specific case and the nature of the crime under investigation.

*United States v. Koelling*, 992 F.2d 817, 822 (8th Cir.1993) (internal citation omitted).  As further

noted by the Eighth Circuit

> It is generally accepted, however, that a warrant need only be executed within a
> reasonable time after its issuance. . . . Timeliness of execution should not be
> determined by means of a mechanical test with regard to the number of days from
> issuance, nor whether any cause for delay was per se reasonable or unreasonable.
> Rather it should be functionally measured in terms of whether probable cause still
> existed at the time the warrant was executed.

*United States v. Shegog*, 787 F.2d 420, 422 (8th Cir.1986) (quoting *United States v. Bedford*, 519

F.2d 650, 655 (3d Cir.1975)).  To determine whether probable cause has "dissipated over time, a

6

court must 'evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought.' " *United States v. Simpkins*, 914 F.2d 1054, 1059 (8th Cir.1990) (quoting *United States v. Foster*, 711 F.2d 871, 878 (9th Cir.1983)).

As stated by the Eighth Circuit, to determine whether a search warrant is invalid because it is based on stale evidence, the Court must take into consideration the particular circumstances of the case and determine whether the averments in the affidavit were sufficiently timely to establish probable cause. In the present case the averments in the affidavit were sufficiently timely to establish probable cause at the time the warrant was executed. The affidavit established probable cause to believe that Defendant was involved in narcotics trafficking from his residence, and the affidavit relied largely on the information provided to Deputy Sheriff Walton by the reliable CI. This information did not substantially change eight days later when the warrant was executed. The affidavit established probable cause that Defendant was involved in an ongoing narcotics trafficking operation, and the fact that the search warrant was executed eight days later did not invalidate that probable cause. Insofar as Defendant's motion to suppress relies on this argument, the Court recommends that Defendant's motion be denied.

**C.      The Affidavit in Support of the Search Warrant Provided Probable Cause for the Issuance of the Search Warrant.**

Defendant challenges the search warrant issued in this case on its four corners. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000)

7

(citing *Gates*, 462 U.S. at 236).   When determining whether probable cause exists, a court does not

evaluate each piece of information independently, but, rather, considers all of the facts for their

cumulative meaning.   *United States v. Allen,* 297 F.3d 790, 794 (8th Cir.2002).   The task of a court

issuing a search warrant is "simply to make a practical, common sense decision whether, given all

the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that contraband or evidence of a

crime will be found in a particular place."  *Gates*, 462 U.S. at 238; *see also United States v. Salter*,

358 F.3d 1080, 1084 (8th Cir.2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court

" 'had a substantial basis for . . . conclud[ing] that probable cause existed.' "   *United States v.*

*Oropesa*, 316 F.3d 762, 766 (8th Cir.2003) (quoting *Gates*, 462 U.S. at 238-39.)  Since reasonable

minds may differ on whether a particular search warrant affidavit establishes probable cause, the

issuing court's determination is accorded great deference.  *United States v. Wajda*, 810 F.2d 754,

760 (8th Cir.1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

As noted by the Eighth Circuit, "[w]hen an affidavit is based in substantial part on

information from an informant, the informant's reliability, veracity, and basis of knowledge are

relevant considerations-but not independent, essential elements-in finding probable cause." *United*

*States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986) (citing *Gates*, at 230; *United States v. Ross*, 713

F.2d 389, 393 (8th Cir.1983)).  As explained by the United States Supreme Court in *Gates*, the

reliability and basis of knowledge of an informant

> are better understood as relevant considerations in the totality-of-the-circumstances
> analysis that traditionally has guided probable-cause determinations: a deficiency in
> one may be compensated for, in determining the overall reliability of a tip, by a
> strong showing as to the other, or by some other indicia of reliability.

462 U.S. at 233. "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir.1993). The Eighth Circuit relied on *Gates* in *United States v. Anderson* when the court noted that "an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination." 933 F.2d 612, 615 (8th Cir.1991) (citing *Gates*, 462 U.S. at 230).

In the present case, looking at the totality of the circumstances, a reasonable person could believe there was a fair probability that contraband or evidence of narcotics trafficking would be found inside the residence. The CI who provided the information about Defendant's narcotics activity was a CI who was known to Deputy Sheriff Walton and who had provided reliable information in the past that led to the seizure of firearms and narcotics. The CI was a reliable informant whose information had been utilized in the past with positive results; therefore, the CI had a track record of supplying reliable information to law enforcement officers.

After receiving reliable information from the CI, Deputy Sheriff Walton sought to corroborate that information. Deputy Sheriff Walton checked the Department of Motor Vehicle records for the green and white Oldsmobile identified by the CI as a vehicle "D Dub" or "Dwight" was known to drive, and discovered that the owner was listed as Dwight William Alexander. This further corroborated the information provided to Deputy Sheriff Walton by the CI, because the CI stated the person he knew was referred to as either "D Dub" or "Dwight" and the listed owner of the green and white Oldsmobile was named Dwight. Deputy Sheriff Walton then obtained a photograph of Dwight William Alexander and the CI positively identified Dwight William Alexander as the person the CI knew as "D Dub" or "Dwight", thus further corroborating the information the CI

9

provided.

Deputy Sheriff Walton continued to corroborate the information provided to him by the CI when he checked the Hennepin County Property tax records and discovered that the owners of the residence were a male and a female, who both had the surname "Alexander".  This piece of information further corroborated the CI's information that "D Dub" lived at home with his parents, as Deputy Sheriff Walton confirmed that the person the CI knew as "D Dub" lived in a residence that was owned by a male and a female, who both shared the surname "Alexander".  Deputy Sheriff Walton further corroborated the information provided by the CI by conducting a criminal history check on Defendant.  As a result of the criminal history check, Deputy Sheriff Walton discovered that Defendant had been arrested two times for first degree drug offenses, and had been arrested a third time for possession of a pistol and possession of a small amount of marijuana.

This case is similar to the facts in *United States v. Williams* 10 F.3d 590 (8th Cir.1993).  In *Williams*, the officer received information from a confidential informant who stated he had known the defendant in the past and knew that, at that time, the defendant had been a narcotics dealer.  *Id*. at 592.  The confidential informant told the officer that the defendant lived in a certain apartment building and that the apartment was listed in the name of Ritta.  *Id*.  The officer investigated and determined that the utilities of the apartment identified by the informant were listed in the name of Ritta Miller.  *Id*.  Thereafter the confidential informant contacted the officer and informed the officer that he had been inside the defendant's apartment on that same day and had seen cocaine and currency inside the apartment.  *Id*.  The confidential informant further stated that the defendant kept money in a safe and had in the past possessed a gun.  *Id*.  Based on this information, the officer applied for a search warrant for the defendant's apartment.  *Id*.  The affidavit in support of the search

warrant included all of the above stated information, and also noted that the confidential informant had provided reliable information in the past which led to the seizure of narcotics and currency. *Id*. The affidavit also stated that the officer was experienced in narcotics investigations. *Id*.

The Eighth Circuit concluded that the facts stated in the affidavit and application for the search warrant established probable cause to issue the search warrant. *Id*. at 594. The Eighth Circuit noted that the informant provided the officer with information that was based on the informant's first-hand observations, and also noted that the officer "had valid reasons to support his belief that this information was accurate, including the proven reliability of the informant when working with law enforcement officers on past occasions." *Id*. The Eighth Circuit further noted that the officer corroborated information from the informant that the apartment was listed in the name of Ritta Miller, and concluded that "[s]uch independent corroboration bolsters the reliability and credibility of the informant's information, and thus, the finding of probable cause." *Id*.

The present case is similar to *Williams*. In the present case, the CI provided Deputy Sheriff Walton with information that Defendant was in possession of a handgun and cocaine that Defendant represented was for sale. This information was based on the informant's first-hand observations. Deputy Sheriff Walton had valid reasons to support his belief that the CI's information was accurate, including the proven reliability of the CI when working with law enforcement officers on past occasions. In addition, Deputy Sheriff Walton corroborated information from the CI that Defendant drives a green and white Oldsmobile and lives at the residence with his parents. Looking at the totality of the circumstances, including the fact that the CI was a reliable informant who had an established track record of supplying reliable information to law enforcement officers, a reasonable person could believe there was a fair probability that contraband or evidence of narcotics trafficking

would be found in the residence.  Therefore, the search warrant was supported by probable cause, and the Court recommends that Defendant's Motion to suppress physical evidence, statements or identifications [#29] be denied[2].

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to suppress physical evidence, statements or identifications [#29] be **DENIED**.

DATED: February 2, 2007                         s/ *Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 22, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 22, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

[2] Defendant's Motion to suppress physical evidence, statements or identifications [#29] is a three part motion; however, as there were no statements or identifications challenged in the present case, the Court recommends that Defendant's motion to suppress statements and Defendant's motion to suppress identifications both be denied as moot.